UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

*In re*:

CHRISTOPHER ROBERT SKOMARS,

Debtor.

Case No. 22-11992-7

**DECISION ON OBJECTION TO EXEMPTIONS
AND MOTION FOR TURNOVER**

Debtor Christopher Skomars filed a voluntary Chapter 7 petition. He claimed exemptions for interests in an annuity, tools, tax refunds, and bank accounts on an amended Schedule C. The Trustee objects to these exemptions. He also seeks turnover of certain assets.

**FACTS**

On his Schedule A/B, Debtor lists an interest in "Allianz Life Insurance Company of North America; 1/3 interest in Contract No. 71362805." (ECF No. 28, p. 8, ¶ 23) ("Contract"). He identifies this as an annuity. This is a payment stream under a life insurance policy issued by Allianz Life Insurance Company to, and owned by, the Debtor's mother, Jennifer Kareken. Debtor was one of three beneficiaries listed in this Contract. On her death, the beneficiaries were given options with respect to the payment of the death benefits—a lump sum, deferral of payment for up to five years, or payment as an annuity over the life of the beneficiary or a period not exceeding life expectancy. The payments commenced when she passed away on September 11, 2022. On February 7, 2023, Allianz issued a check payable to Debtor in the amount of one-third of

the Contract value—$12,071.48. (ECF No. 62-1, pp. 66–67.) Debtor claims this is exempt as an annuity under Wisconsin exemptions.

Debtor also lists twenty-four items of machinery, fixtures, equipment, and supplies. (ECF No. 28, p. 13.) Included in that list are a "Classic 78 Toolbox" worth $4,270; a "Stainless Toolbox Top" worth $1,320; a "Wrench set" worth $3,675; and a "Metric Wrench Set" worth $5,735. Claiming Wisconsin exemptions, he says these items are exempt as tools of the trade.

Together with the Contract and specific tools described above, the Trustee seeks turnover of the tax refunds and bank account balances as of December 21, 2022, that were not claimed as exempt. Debtor now concedes that any tax refunds should be turned over. Debtor also concedes that the funds that were in the bank accounts will be turned over. (ECF No. 67, p. 8.)

## DISCUSSION

A. Standard

Debtor claimed Wisconsin exemptions. "[W]hen a debtor claims a *state-created* exemption, the exemption's scope is determined by state law." *Law v. Siegel*, 571 U.S. 415, 425 (2014). Whether a debtor is entitled to an exemption is determined by looking at the debtor's property on the petition date. *In re Willis*, 495 B.R. 856, 860 (Bankr. W.D. Wis. 2013).

"[I]t is a cardinal rule in Wisconsin that exemption laws must be liberally construed." *In re Woods*, 59 B.R. 221, 224 (Bankr. W.D. Wis. 1986) (citations omitted). Construction of the exemption statute requires both favoring the debtor and recognition that the statute reflects a legislative choice to protect

2

certain assets at the expense of others. *In re Woller*, 483 B.R. 886, 890 (Bankr. W.D. Wis. 2012). But, "[w]hile it is true that the . . . exemption statute is to be liberally construed, the principles of liberal construction cannot be employed to write exemptions into the statutes." *Schwanz v. Teper*, 66 Wis. 2d 157, 164, 223 N.W.2d 896 (Wis. 1974).

This case involves the interpretation of Wisconsin exemption statutes. It begins with the language of the statute. "If the plain meaning of the statute is clear, a court need not look to rules of statutory construction or other extrinsic aids. Instead, a court should simply apply the clear meaning of the statute to the facts before it." *UFE Inc. v. Labor & Indus. Rev. Comm'n*, 201 Wis. 2d 274, 281-82, 548 N.W.2d 57 (Wis. 1996) (internal citations omitted). Wisconsin recognizes that "when a court construes an ordinance or statute, words must be given their common meaning." *Weber v. Town of Saukville,* 209 Wis. 2d 214, 224, 562 N.W.2d 412 (Wis. 1997) (citing *State v. Martin,* 162 Wis. 2d 883, 904, 470 N.W.2d 900 (Wis. 1991) (citations omitted in original)).

"A statute or portion thereof is ambiguous when it is capable of being understood by reasonably well-informed persons in either of two or more senses." *State ex rel. Neelen v. Lucas*, 24 Wis. 2d 262, 267, 128 N.W.2d 425 (Wis. 1964) (citing *State ex rel. West Allis v. Dieringer*, 275 Wis. 208, 218, 81 N.W.2d 533 (Wis. 1957)). But disagreement as to the meaning of a statute is not controlling. Courts must look to the language of the statute itself to determine if "well-informed persons" *should have* become confused.

The test for statutory ambiguity focuses first on the language of the statute, not the competing interpretations of it offered by lawyers or judges. The statutory language is given its common and ordinary meaning or specially-defined terms are given the special definitional meaning assigned to them. *Weber*, 209 Wis. 2d at 224, 562 N.W.2d 412. If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity. "In construing or 'interpreting' a statute the court is not at liberty to disregard the plain, clear words of the statute." *State v. Pratt*, 36 Wis. 2d 312, 317, 153 N.W.2d 18 (Wis. 1967).

Federal Rule of Bankruptcy Procedure 4003(c) provides that the objecting party has the burden of proving that the exemptions are not properly claimed. Once the objecting party produces evidence to rebut the presumptive validity of a claimed exemption, the burden shifts back to the debtor to present evidence demonstrating the exemption is proper. *Elliott v. Weil (In re Elliott)*, 544 B.R. 421, 429 (B.A.P. 9th Cir. 2016).

B. <u>Annuity Exemption under Wis. Stat. § 815.18(3)(f)</u>

The Wisconsin statutes provide an exemption in:

> [A]ny unmatured life insurance or annuity contract owned by the debtor and insuring the debtor, the debtor's dependent, or an individual of whom the debtor is a dependent, other than a credit life insurance contract, and the debtor's aggregate interest, not to exceed $150,000 in value, in any accrued dividends, interest, or loan value of all unmatured life insurance or annuity contracts owned by the debtor and insuring the debtor, the debtor's dependent, or an individual of whom the debtor is a dependent.

Wis. Stat. § 815.18(3)(f)(2).

4

Debtor ignores the plain language of the statute. He argues that the Contract would not be property of the estate if he did not own it. Thus, he concludes, the Trustee would have no claim to it at all. He says that because Wis. Stat. § 815.18(3)(f)(2) uses the phrase "annuity contract owned by the debtor" it must mean he owns the Contract for it to be property of the estate. Because the word "own" is not defined in the statute, Debtor argues that being entitled to a payment from the Contract must mean he owns the Contract.

Searching for support, the Debtor points to a Wisconsin Court of Appeals case related to a charitable trust. *Reichel v. Jung (In re Estate of Jung)*, 2000 WI App 151, 237 Wis. 2d 853, 616 N.W.2d 118. Debtor believes that here, as in *Jung*, the annuity contract expressly provides for what will happen in the event of the original owner's death. The Contract states:

> Your contract provides a Death Benefit payable to the Beneficiary(ies) before Annuity Payments begin.
>
> [. . .]
>
> If the sole Owner dies before Annuity Payments begin, the surviving joint Owner automatically becomes the sole primary Beneficiary, replacing all primary Beneficiaries previously named, and we will pay the Death Benefit to the surviving joint Owner. If the surviving joint Owner dies before we pay the Death Benefit, we will pay the Death Benefit to his or her estate.
>
> If the Owner is a non-individual and the Annuitant dies before Annuity Payments begin, we will pay the Death Benefit to the Beneficiary(ies).
>
> For multiple Beneficiaries, the surviving Beneficiaries share equally in the Death Benefit unless you specify otherwise.

Life Insurance Contract, ECF No. 62-1, p. 23.

The Contract is unambiguous: the Debtor's mother is listed as the Owner. (ECF No. 62-1, pp. 1, 7.) She is also listed as the Owner on the Debtor's application for benefits. *Id.* at pp. 57, 65. The contract defines "Owner" as "[a] purchaser of this contract, who is entitled to the ownership rights described in this contract. Owners are shown on the Contract Schedule." *Id.* at p. 14.

Debtor did not purchase the Contract. He is a Beneficiary. The Contract defines "Beneficiary" as "[a]n individual or non-individual entitled to the Death Benefit under this contract. If an Owner dies, any surviving Owner automatically becomes the sole primary Beneficiary and replaces any primary Beneficiary you previously named." *Id.* at p. 13. As such, he is simply entitled to receive a share of the Death Benefit. *Id.* at p. 58.

*Black's Law Dictionary* defines beneficiary as someone who is designated to receive an advantage from an action or designated to receive money or property from a person who has died. *Black's Law Dictionary* (11th ed. 2019). That is precisely the situation here. Debtor does not own the Contract; he is just one of three people designated to receive the value of the Contract on its owner's death. The first element of Wis. Stat. § 815.18(3)(f)(2) is not satisfied. Simply because he's receiving payments under the Contract doesn't mean that he owns it.

Yet the Debtor insists that he is the Owner. Simply because he has similar payment options under the Contract as his mother doesn't mean that he inherited the status of "Owner." Contrary to the Debtor's argument, *Clark v. Rameker,* 573 U.S. 122 (2014), does not make him an owner entitled to claim

6

an exemption. Unlike *Clark*, the Contract naming the Debtor as a beneficiary possesses all the same features or options that were available to the Owner. The *Clark* decision focused on limitations and differences placed on the beneficiary and then the terms of the statute. Doing so, it then reasoned that inherited IRAs have three distinct characteristics that place them outside the exemption:

> First, the holder of an inherited IRA may never invest additional money in the account. 26 U.S.C. § 219(d)(4) . . . . Second, holders of inherited IRAs are required to withdraw money from such accounts, no matter how many years they may be from retirement . . . . Finally, the holder of an inherited IRA may withdraw the entire balance of the account at any time—and for any purpose—without penalty.

573 U.S. at 128. The reason for the exemption was to ensure that the protection was for a debtor's basic needs during retirement, but that's not the case for inherited IRAs. *Id.* at 129.

The Debtor's argument is unavailing. Simply because the Debtor has similar payment options to those his mother had under the Contract doesn't mean that he inherited the status of "Owner." This conclusion is bolstered by the Wisconsin Court of Appeals. It held that the former life insurance exemption statute, Wis. Stat. § 815.18(19) (1987-1988), only provided for an exemption for life insurance proceeds from the insured's creditors, not the beneficiary's. *Boches v. Merry*, 166 Wis. 2d 1, 480 N.W.2d 568 (Wis. Ct. App. 1991). There, the appellant's ex-wife took out a life insurance policy before they divorced naming the appellant as the primary beneficiary. The appellant was indebted to his mother-in-law under two promissory notes. The appellant and his wife divorced, and his wife later passed away. The mother-in-law brought a

7

garnishment action against the appellant which sought to execute on the life insurance proceeds. The court held that the proceeds were not exempt.

The exemption at issue reads that only an "unmatured life insurance or annuity contract owned by the debtor," is exempt from execution by the debtor's creditors. A beneficiary of a contract doesn't enjoy the same protection.

The Debtor is not the Owner of the Contract. By definition it is matured because if not, the Debtor would receive nothing from it. Finally, the Debtor fails to satisfy the second required element—that it insures the debtor, the debtor's dependent, or an individual of whom the debtor is a dependent. *See* Wis. Stat. § 815.18(3)(f)(2). The Debtor is a beneficiary and not an insured. It was his mother who was insured.

For these reasons, the objection is sustained.

C. <u>Tools and Equipment Exemption under Wis. Stat. § 815.18(3)(b)</u>

Debtor claims a "Classic 78 Toolbox" worth $4,270; a "Stainless Toolbox Top" worth $1,320; a "Wrench set" worth $3,675; and a "Metric Wrench Set" worth $5,735, exempt under Wis. Stat. § 815.18(3)(b). That section provides an exemption in "[e]quipment, inventory, farm products, and professional books used in the business of the debtor or the business of a dependent of the debtor, not to exceed $15,000 in aggregate value."

The statute defines "business" as "any lawful activity, including a farm operation, conducted primarily for the purchase, sale, lease or rental of property, for the manufacturing, processing or marketing of property, . . . or for the sale of services." Wis. Stat. § 815.18(2)(b).

8

The statute is clear. It applies to tools or equipment (1) used in business and (2) of the debtor or debtor's dependent. Debtor cannot satisfy the requirements.

On the petition date, Debtor was employed as a cashier at Domino's. He had no business income. He did not file a business income budget. The amended Statement of Financial Affairs (ECF No. 47, p. 2) does not list any business income year-to-date or in the previous two years. In response to whether the Debtor had any business interest in the last four years, the Debtor answered "no" on his Statement of Financial Affairs (ECF No. 47, p. 11). His 2022 income tax return does not disclose any business income.

At some time in the past, Debtor worked as a motorcycle mechanic. He says the tools were purchased and used during that time.

Again the Debtor resorts to an argument that the statute is ambiguous. Even though Debtor concedes he does not currently operate a business, he argues that the statutory exemption should apply because at some time in the past he used them as a mechanic.

To qualify as exempt equipment, the item must actually be used in a business. *In re Woller*, 483 B.R. at 896. The Debtor was not engaged in the trade to which the tools belong when he filed bankruptcy. He had not been engaged in such a trade at any time for at least two years. That is a requirement under the exemption for tools of the trade. *Johnson v. Richardson (In re Richardson)*, 47 B.R. 113, 118 (Bankr. W.D. Wis. 1985). The determination is made as of the petition date. *In re Willis*, 495 B.R. at 860.

9

The Debtor has not claimed that he works as a mechanic—whether on the petition date or after. His employment on the petition date was listed as "Food Service," and his employer was "CDA Pizza Inc." (ECF No. 10, p. 31). The Debtor doesn't currently own a business using the tools, nor did he own or operate any business using the tools in the past four years.

"[E]quipment . . . used in the business of the debtor" is the subject of the exemption. Wis. Stat. § 815.18(3)(b). "Business" is defined as "any lawful activity . . conducted primarily for the purchase, sale, lease or rental of property . . . or for the sale of services." Wis. Stat. § 815.18(2)(b). The statute does not extend to tools that might have been used in a trade in the past or a business that may have been operated by a debtor in the past. The Court need not speculate about whether the exemption could be stretched to include a business once again being undertaken by a debtor because there is no evidence of any such future activity.

There is simply no interpretation of the statute that could allow such an exemption without rendering the exemptions void as overbroad and all-encompassing. Even with an interpretive generosity in favor of the Debtor, "the principles of liberal construction cannot be employed to write exemptions into the statutes." *Schwanz v. Teper*, 66 Wis. 2d at 164, 223 N.W.2d 896.

So the objection must be sustained.

D. <u>Other Tools, Tax Refunds, and Money in Checking and Savings Accounts</u>

Finally, the Trustee requests turnover of other non-exempt tools valued at approximately $6,317,[1] $850.03 from the Debtor's 2022 state and federal tax refunds, and any funds that were in the Debtor's checking and savings accounts on the date of the petition.[2] The Debtor did not list any of this property as exempt on his amended Schedule C. So the Trustee contends that they are property of the estate and subject to turnover.

In response, the Debtor states that he doesn't oppose turning over his other non-exempt tools. He also agrees that the IRS has filed a $1,994 priority claim for taxes in his case (Claim No. 2-1) and thus doesn't object to turning over $850.03 from his tax refunds. Similarly, the Debtor states that while he needs the funds in his savings and checking accounts, they are not exempt and he will turn over the funds.

The Debtor must turn over $850.03 from his 2022 tax refunds, the bank account balances as of the petition date, and other non-exempt tools.

---

[1] These tools are: 40 screwdrivers ($400); oil wrench ($100); impact driver set ($100); voltmeter ($90); 3 torque wrenches ($450); box end wrench ($200); box-end wrench ($50); 26 pliers ($300); pry bar pack ($259); matco impact gun ($600); allen wrench set ($70); socket set drivers ($1,000); Snap-On hammers ($210); crescent wrenches ($200); mac blow hammer ($63); Snap-On ¾" driver extensions ($500); impact socket set ($600); blue point vacuum ($135); brake bleeder pump ($290); and a cordless impact ($700).

[2] The Debtor listed $582.79 in his checking account and $5.00 in his savings accounts on his amended Schedule A/B (ECF No. 28). But the Trustee states that bank statements showed that the Debtor had $899 in his checking account and $5.00 in his savings account on the petition date, for a total of $904.

## **C**ONCLUSION

Wisconsin's exemption statutes are meant to be read liberally and in favor of the debtors claiming them. And under the bankruptcy rules, parties objecting to exemptions carry the burden of proof. Yet even with these statutory and procedural safeguards, the Debtor here cannot claim the exemptions he seeks. Debtor does not own the Contract. He is a beneficiary and not the annuitant. Only the owner, or the insured—and not the beneficiaries—enjoy the exemption for life insurance or an annuity.

Although Debtor worked as a mechanic in the past, he is not one now; nor has he operated a business or been a mechanic for at least two years. He has failed to establish that he uses the tools in a business owned by him. Because he has failed to establish that he uses the tools in a business owned by him, Debtor has not satisfied the elements to claim the tools of the trade exemption.

For these reasons, the exemption claims are denied. Debtor must turn over the non-exempt property to the Trustee.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: December 28, 2023

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge